REGINA CONKLIN, APPELLANT, v. BRIGHTON MILLS. IN-
CORPORATED, RESPONDENT.

Argued October 23, 1928—Decided February 4, 1929.

For the appellant, *Ward & McGuinness* and *Louis C. Friedman.*

For the respondent, *Kellogg & Chance.*

The following opinion was prepared by former Mr. Justice Minturn, in compliance with the assignment to him. It clearly expresses the view of the court upon the matters involved in the litigation, and is adopted by the court as its own opinion in the cause.

MINTURN, J. The plaintiff in this action was employed by Brighton Mills, Incorporated, with its manufacturing business located at Allwood, in the county of Passaic, and her suit was for injuries received upon the 5th of June, 1925, when she and three other girls entered upon the platform of the electrical freight conveying truck of the defendant, which stood at rest in the shipping room of the defendant's mill, during the noon recess hour. The operator of the truck, one Kovalsky, entered the shipping department about ten minutes to one on that day, and, according to the plaintiff, requested the four girls to leave the truck, but before they had an opportunity of so doing, the operator ascended the truck and operated it at fifty miles an hour, from one side of the room

to the other, in a zigzag fashion, in a backward manner, while the girls were standing on the platform of the truck, with their backs in the direction in which the truck was proceeding, and with nothing to hold upon, so that by reason of the willful and malicious conduct of the employe three of the girls fell from the truck after it had proceeded about fifty or fifty-five feet, and about ten or twelve feet further on, the plaintiff fell from the truck, by reason, as it is claimed, of the recklessness of the operator of the truck; when she fell off, the truck ran over her legs and caused her to suffer severe compound fractures of the left leg, and other serious injuries, to recover for which she brought this suit.

It was further in evidence that the operator was directed by his employer not to allow any one upon the truck. The facts developed at the trial were substantially as thus stated; and the trial court was of the opinion that since the accident occurred at ten minutes to one, and while all the parties were off duty and not engaged at their work in the employ of the defendant, the defendant's agent was not acting in the course and within the scope of his employment in undertaking to operate the truck in the manner indicated, with the plaintiff upon it, and ordered a nonsuit entered; from which judgment the plaintiff appeals.

Several grounds for reversing the judgment are argued by counsel, but we think most of them are immaterial, in view of the fact that according to the testimony of the plaintiff's own witnesses, Kovalsky was not operating the truck in the line of his employment, for the purpose of performing the work of his master, but apparently for reasons purely personal to himself.

In view of that situation, which we conceive to be the factual status of the case, it is manifest that the Workmen's Compensation law of this state is not applicable to the case. If it be assumed that his service in the employ of his master could be extended so as to cover the entire noon recess hour, during which he and the girls were at liberty to pursue their own activities, and were not required to perform any service for the master, what the agent did was so disconnected from the master's employment as to constitute him during that period

no longer the servant of the master, but to make him *in personam* responsible for his own acts.

The rule of law in cases of this character is based upon the fundamental theory that for the acts of the servants occurring during the particular employment, under the adjudications of this court, and quite uniformly throughout the states, the master is held liable upon the legal principle underlying the doctrine of master and servant, and when that particular service or employment is at an end, the legal relationship of the parties is likewise terminated, and the legal responsibility of the master thereby necessarily ceases for the acts of the agent thus disconnected from the service.

Liability of the master in situations of this character is predicated upon the rule of law resulting in the legal maxim *qui facit per alium facit per se;* from which is deduced the legal doctrine inherent in the rule, *respondeat superior;* and it would require, under this legal theory of vicarious responsibility, an intensive strain of the imagination to assume, under the circumstances of this case, that the acts of the employe could, for any practical purpose, be construed to be rendered in furtherance of the master's work, or for any service connected therewith, by the operator who thus caused the injuries complained of.

Manifestly the mere happening of this accident upon the premises of the defendant, caused by a person not engaged in the prosecution of the master's work, and at a time when the servant was free to indulge his spare time for diversion or other personal conduct, free from the master's supervision, could impose no liability upon the master. In such a situation the servant obviously is responsible for damage caused by his own acts, but cannot impose liability upon the master for injuries resulting therefrom where the legal relationship of master and servant has been thus temporarily suspended or terminated.

The entire theory of legal responsibility for acts of tort feasance is predicated upon the premises of a co-existing legal duty upon the part of the master for the acts of his servant; and legal liability cannot be said in any case to exist until the precedent condition of legal duty upon the part of the master

shall have been established; and when the legal duty or obligation upon the master has ceased to exist, manifestly legal liability upon his part also ceases to exist. This court has recognized this fundamental rule in a variety of cases, from some of which citations may be aptly extracted to evince the propriety of the application of the rule to the case *sub judice*. Thus, in the case of *Karas* v. *Burns Brothers*, 94 *N. J. L.* 59, where an infant plaintiff was helped upon a coal wagon by the driver, and was injured by being thrown from the wagon, a verdict for the plaintiff was set aside by this court upon the legal theory to which we have adverted, namely, that the driver in inviting the boy to a seat upon the wagon was performing an act entirely outside and apart from his legal duty, and without the scope of his authority; and we there said, quoting from Mr. Justice Reed, in *Kiernan* v. *New Jersey Ice Co.*, 74 *Id.* 175: "A servant in extending an unauthorized invitation to a person to ride upon a dump cart, or to ride upon a hand car, or to a child to ride upon a trolley car, or upon a gravel train or freight car, is not acting within the scope of his authority, and if the invited person is injured the master is not liable."

So, in *Holler* v. *Ross*, 68 *N. J. L.* 324, it was stated by this court that "the master is not responsible if the wrong done by the servant is done without his authority and not for the purpose of executing his orders or doing his work."

The same principle is adverted to and supported in *Evers* v. *Krouse*, 70 *N. J. L.* 653; *Doran* v. *Thomsen*, 76 *Id.* 754; *Missell* v. *Hayes*, 86 *Id.* 348; *Jennings* v. *Okin*, 88 *Id.* 659; *Cronecker* v. *Hall*, 92 *Id.* 450.

Some of these cases involved the liability of the master for a deviation of the driver of an automobile, during which injury resulted to a third person; and it was held that liability of the master was not thereby imposed. In the Karas case, *ubi supra,* we observed, "the conspicuous principle at the basis of the entire relationship is that liability of the master ceases when the agent is acting, not in the master's occupation, but in line of conduct peculiar to himself, and suggested not by any benefit or accommodation to the master or to the

master's interest. In such a situation the agent becomes the principal, and is liable for the natural consequences of his independent acts."

In the case of *Zampella* v. *Fitzhenry,* 97 *N. J. L.* 517, we took occasion to review the authorities from the early common law up to the date of the rendition of the adjudication, and we there invoked the rule laid down in 1 *Bl. Com.* 430, as follows:

"If a servant, by his negligence, does any damage to a stranger, the master shall answer for his neglect, but in these cases the damage must be done while he is actually employed in the master's service; otherwise the servant shall answer for his own misbehavior."

So we cited in that case an observation of Lord Kenyon in *Croft* v. *Allison,* 4 *B. & A.* 590; 6 *E. C. L.* 614, as follows: "When a servant quits sight of the object for which he is employed, and without having in view his master's orders, pursues that which his own malice suggests, he no longer acts in pursuance of the authority given him."

In *Jennings* v. *Okin, ubi supra,* we declared as follows: "From the moment it [the deviation] was undertaken by the servant the relationship of principal and agent theretofore subsisting was severed." And we continued: "It matters nothing in the legal equation whether the deviation which caused the damage consisted of a malicious act in no wise related to the master's business, or of an independent act peculiarly due to the whim or the individual capriciousness of the servant in failing to attend to the business entrusted to him. The act in either event, being disconnected from the master's work and having no logical or legal relation thereto, the master, upon any theory of agency or representation, is exempt from responsibility."

We think it unnecessary in the present case to exemplify this legal rule further, for manifestly its application to the case at bar must be obvious and beyond all reasonable controversy.

The result is that the judgment appealed from will be affirmed.

*For affirmance*—The Chancellor, Chief Justice, Black, Katzenbach, Campbell, Lloyd, White, Van Buskirk, Hetfield, Dear, JJ. 10.

*For reversal*—Trenchard, Parker, JJ. 2.